# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

YOANDY FERNANDEZ-MORALES,

Plaintiff

v.

CURRIER, et al.,

Defendants

Case No.: 3:23-cv-00115-ART-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 18

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion to dismiss. (ECF Nos. 18, 18-1.) Plaintiff filed a response. (ECF No. 21.) Defendants filed a reply. (ECF No. 24.)

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC), though he is now housed at High Desert State Prison (HDSP). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with a single Fourteenth Amendment due process claim against defendants Currier, Hutchings, Hernandez, and McDaniels. The claim is based on Plaintiff's allegation that he was assigned a job as a prison yard labor worker, but he was not paid for all of his work. He was told he was not being paid because he did not have a Social Security card in his file, even though he maintains his Social

1    Security card was in his file. He claims that he filed grievances and met resistance from Currier,

2    Hutchings, Hernandez, and McDaniels.

3         In the screening order, the court noted that while an authorized, intentional deprivation of

4    property is actionable under the Due Process Clause, neither a negligent nor intentional

5    unauthorized deprivation of property  by a prison official is actionable if a meaningful post-

6    deprivation remedy is available for the loss. (Screening Order, ECF No. 6 at 5, citing *Hudson v.*

7    *Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985)). An

8    authorized deprivation is one carried out pursuant to established state procedures, regulations or

9    statutes. (*Id.*, citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v.*

10   *MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *Knudson v. City of Ellensburg*, 832 F.2d

11   1142, 1149 (9th Cir. 1987)). In screening the complaint, the court concluded: "Liberally

12   construing the allegations, Plaintiff is entitled to payment for his prison labor job, yet prison

13   officials have deprived Plaintiff of his funds based on state procedures or regulations concerning

14   documents needed for payment." (*Id.*)

15        Defendants move to dismiss Plaintiff's complaint, arguing: (1) he failed to exhaust

16   administrative remedies; and (2) they are entitled to qualified immunity because, at most,

17   Plaintiff alleges either a negligent or an intentional unauthorized deprivation of his property.

18                  **II. LEGAL STANDARD**

19        Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for

20   the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

21   Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab.*

22   *Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this

23   standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v.*

1  *Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most

2  favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395

3  U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*,

4  556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action,

5  supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal

6  conclusions can provide the framework for a complaint, they must be supported by factual

7  allegations." *Id*. at 679.

8          Allegations in pro se complaints are held to less stringent standards than formal pleadings

9  drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980);

10  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889,

11  893 (9th Cir. 2011).

12          Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and

13  plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P.

14  8(a)(2).  The Supreme Court has found that at a minimum, a plaintiff should state "enough facts

15  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

16  570 (2007); *see also Iqbal*, 556 U.S. at 678.

17           "A claim has facial plausibility when the plaintiff pleads factual content that allows the

18  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

19  *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a

20  defendant has acted unlawfully." *Id*.  (citation omitted). "Determining whether a complaint states

21  a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw

22  on its judicial experience and common sense." *Id*.  at 679 (citation omitted).  Allegations can be

23

1  deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at

2  682.

### III. DISCUSSION

**A. Exhaustion**

   **1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

Once a defendant shows the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with

4

the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

**2. AR 740**

AR 740 contains NDOC's grievance procedures required to exhaust administrative remedies. (ECF No. 18-1.) AR 740 requires the inmate to proceed through three levels to complete a grievance: informal, first and second levels.

AR 740 provides timelines for the prison to provide a response to a grievance—45 days from the date the grievance is received by the grievance coordinator for responses to informal and first level grievances, and 60 days from the date the grievance is received by the grievance coordinator for a second level grievance. (*Id*. at 12, 14, 15.) If a response is overdue, the inmate may proceed to the next grievance level. (*Id*. at 6.)

///

///

### 3. Analysis

Preliminarily, the court agrees that exhaustion is properly raised in a motion to dismiss in this case where Plaintiff has attached the relevant grievance documentation to his complaint and the court may take judicial notice of the applicable Administrative Regulation (AR) 740, which governs the grievance process and exhaustion within NDOC. Fed. R. Evid. 201.

Next, Plaintiff attached three grievances to his complaint, but only one of those—grievance 20063132068—is relevant to his claim about his wages from his prison job. (ECF No. 7-1 at 5-12.) The other two relate to his alleged improper termination from his prison job after he was placed on medical leave due to an ankle injury. (*Id*. at 13-45.)

The court will now address whether Plaintiff properly exhausted his administrative remedies for this claim through grievance 20063132068 or whether administrative remedies were unavailable.

On December 25, 2021, Plaintiff submitted his informal level grievance asserting that he was not paid for his prison job even though his Social Security card had been in his file for more than two years. He asked to be paid his wages for work performed. (ECF No. 7-1 at 5.) The grievance was signed as received by the grievance coordinator on December 29, 2021. (*Id*.) Hernandez responded to the informal level grievance, and there is a transaction date of January 12, 2022, though the disposition of the grievance is approved by the grievance coordinator on January 24, 2022, and signed by Hernandez on January on January 26, 2022. Plaintiff's disagreement with the informal level response was noted with a date of February 4, 2022. (*Id*. at 5-6.) The response states that to be paid for work, inmates must have a valid Social Security Card on file. Plaintiff was advised that his Social Security Card was verified as being in his file in November 2021. To resolve the matter, it was to be coordinated to change his assignment

from a non-pay position to a pay position retroactive to December 1, 2021. The grievance was described as "resolved." (*Id*. at 6.)

Plaintiff submitted his first level grievance on February 8, 2022. It is signed as received by the grievance coordinator on February 14, 2022. Plaintiff said that Hernandez indicated his Social Security card had been in his file as of May 12, 2021; therefore, Plaintiff requested that he be paid retroactively from that date. (*Id*. at 7-8.) Under AR 740, prison officials had 45 days, until March 31, 2022, to respond to the first level grievance, or Plaintiff was free to proceed to the next level.

On April 5, 2022, Plaintiff submitted his second level grievance, noting the failure to provide him with a response to the first level grievance within 45 days. (*Id*. at 10-11.) Plaintiff's second level grievance was signed by the grievance coordinator on April 6, 2022. Under AR 740, prison officials had 60 days, until June 5, 2022, to respond to Plaintiff's second level grievance.

W. Hutchings responded to the first level grievance. The first level grievance response contains a transaction date of June 8, 2022. (*Id*. at 9.) The first level grievance itself is signed by the grievance coordinator on June 10, 2022, and by the warden on June 12, 2022. (*Id*. at 8.) The response was over two months late, and Plaintiff had already moved to his second level grievance, as he was permitted to do under AR 740.

In the response to the first level grievance, Plaintiff was again told that he would be paid for the work performed from November 2021 forward, but not prior to the verification of his Social Security card in November 2021. Again, the grievance was described as "resolved." (*Id*. at 9.) Plaintiff signed the first level grievance, indicating his disagreement on July 8, 2022. (*Id*. at 8.)

An improper grievance memorandum was issued with respect to the second level grievance on November 2, 2022. (*Id.* at 12.) This was almost seven months after Plaintiff had filed his second level grievance, and nearly five months after the response was due under AR 740. The improper grievance memorandum rejected the second level grievance stating it was "Missing documents: Receipts of previous levels submitted" and checked the box for "Alterations." (*Id.*) It states: "Per AR 740.08 number 4D(5), ALL **documentation** and factual allegations available to the inmate must be submitted at this level with the grievance." (*Id.*) In addition, "this grievance has alterations as per AR 740.04, you must remain on the lines provided." (*Id.*) The memorandum instructs the inmate to correct the noted deficiencies and re-submit the grievance at the same level. A failure to do so constitutes abandonment of the grievance. (*Id.*)

Defendants argue that Plaintiff did not resubmit his second level grievance; therefore, he did not properly exhaust his administrative remedies.

AR 740.08(4)(D)(5) states that an inmate shall use a Grievance Statement Continuation Form (Form DOC-3097) if he is unable to present all details of the claim in the space provided (with a maximum of two forms being allowed), and "[a]ll documentation and factual allegations available to the inmate must be submitted at this level with the grievance." (ECF No. 21 at 48.) But this comes under AR 740.08, which deals with *informal* grievances. The grievance that was rejected was a *second* level grievance. There is no corresponding requirement in AR 740 to submit all documentation for second level grievances.

The memorandum also states that the grievance has alterations, and per AR 740.04, Plaintiff was required to remain on the lines provided. AR 740.04 states that it is considered an abuse of the inmate grievance procedure when an inmate files a grievance that contains an

alteration, which "includes writing more than one line, on each line provided on the grievance form." (ECF No. 21 at 44.) The court has reviewed Plaintiff's second level grievance and it does not appear to contain more than one line of text on each line provided in the grievance form. In fact, the second level grievance is neatly printed on the lines provided. (ECF No. 7-1 at 10-11.)

In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court noted three instances where administrative procedures are unavailable to an inmate: First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 578 U.S. at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. at 643-44. "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. This may occur "[w]hen rules are so confusing that … no reasonable prisoner can use them[.]" *Id*. at 644 (citation and quotation marks omitted). "[W]hen a remedy is … essentially 'unknowable'— so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id*. (citations omitted). Finally, administrative remedies are unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

The Ninth Circuit characterized this as a "non-exhaustive list." *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017), *as amended*. The Ninth Circuit has held that where "prison officials declined to reach the merits of a particular grievance 'for reasons inconsistent with or unsupported by applicable regulations,' administrative remedies were 'effectively unavailable.'" *Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014) (citing *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010)).

Here, the reasons for rejecting Plaintiff's second level grievance are inconsistent with and unsupported by the applicable provisions of AR 740. Plaintiff was not required by AR 740 to submit any additional documentation with his second level grievance. Nor did his second level grievance contain an improper alteration (*i.e.*, more than one line of text on each provided blank line of the grievance form). Therefore, administrative remedies were effectively unavailable to Plaintiff.[1]

Defendants' motion to dismiss should be denied insofar as Defendants argue that Plaintiff failed to exhaust his administrative remedies.

**B. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Those who seek to invoke due process protections must establish one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209 (2005). Prisoners have a protected interest in their personal property. *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (en banc) (citing *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).

---

[1] As a result of this conclusion, the court need not reach the issue of whether administrative remedies were unavailable to Plaintiff as a result of the significant delay in responding to his second level grievance.

Where a prisoner alleges a deprivation of a property interest caused by the unauthorized negligent or intentional action of a prison official, he does not state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Barnett v. Centoni*, 3 F.3d 813, 816 (9th Cir. 1994) (per curiam). Nevada provides a meaningful post deprivation remedy for the loss of personal property. *See* Nev. Rev. Stat. § 41.0322 (for prisoners in custody of NDOC).

If a prisoner is challenging conduct taken pursuant to an established or authorized state procedure, rule or regulation, the existence of an adequate post-deprivation remedy is irrelevant. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982). "[W]here the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes." *See Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). "The underlying rationale...is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations occur." *Hudson*, 468 U.S. at 533.

Plaintiff alleges that he was not paid wages for work in his prison job. He avers that he was told this was because he did not have a Social Security card in his file. He claims his Social Security card had been in his file for two years, but he was still not paid all of his wages. His grievances attached to his complaint demonstrate that the prison took the position that his Social Security card was not verified in his file until November 2021, and he was ultimately given retroactive pay through that date, but he argued that he should have been given retroactive pay back to May 2021, when he claims his Social Security card was verified. In other words, his

claim is that he should have been paid for all periods of time when his Social Security card was verified as being in his file but was not. Therefore, the deprivation of his wages was not pursuant to an authorized state procedure, but at most, negligent or intentional unauthorized conduct on the part of prison officials in denying him wages even though his Social Security card was in fact on file. In other words, he does not allege that prison officials acted pursuant to an established state procedure or regulation, but that they acted either negligently or intentionally *in contravention of* state procedures in failing to pay him when his Social Security card was on file.

While the screening order liberally construed Plaintiff's allegations as stating a due process claim, on further review of the allegations and the exhibits attached to the complaint (which may be considered on a motion to dismiss), the court finds that Plaintiff fails to state a constitutional claim for relief for violation of his rights under the Fourteenth Amendment's Due Process Clause. Plaintiff had an adequate post-deprivation remedy for negligent and/or intentional unauthorized deprivation of his personal property. Since there was no constitutional violation, Defendants are entitled to qualified immunity, and their motion to dismiss should be granted.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion to dismiss on qualified immunity grounds and enter judgment in their favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 9, 2024

Craig S. Denney
United States Magistrate Judge

13